GLADNEY, Judge.
This action by Strunk Chain Saws, Inc., against C. W. Williams was brought to collect a balance of $500 on an account. There was judgment rejecting plaintiff’s demands, and it has appealed.
The defendant, a dealer and distributor of products manufactured by plaintiff, in June of 1956 had become indebted in the sum of $2,430.72 for merchandise. Plaintiff was concerned about the collection of the account when it received a letter from J. B. Starns. The letter, dated June 14, 1956, advised of the formation of a company for the purpose of taking over the assets and liabilities of the defendant, stating:
“ * * * Rather than return the merchandise to you we would like to take over this indebtedness and make the payments in 6 equal payments, or sooner, if possible. All merchandise that is shipped to the new corporation will either be sight draft or 15 day account. If the above proposal meets with your approval it will be a pleasure to continue a business association with you. Later we hope to take on the line of Strunk pumps and power plants, as we feel there is a very good outlet in this area for these items * *
The company so formed was a partnership composed of J. B. Starns and Lloyd E. Felder, and was named S & F Repair Service.
Plaintiff promptly sent its agent, John Keyworth, Jr., to Shreveport. Keyworth testified his mission was to establish some means of settling the account or to pick up the merchandise; and that in attempting to adjust the account an inventory prepared by the defendant was used which disclosed the value of the merchandise listed thereon equaled the amount of the Williams account. On June 27, 1956, the defendant wrote a letter addressed “To Whom It May Concern”, in which he agreed to “turn over to S & F Repair Service equipment and *196 parts of Strunk Chain Saws, Inc. in the sum total of $2,427.22.” An agreement was worked out between Keyworth and S & F Repair Service, whereby the latter received the merchandise from Williams, paid $500 on the delinquent account, and executed its notes for the balance in favor of plaintiff corporation. The defendant’s name did not appear on the notes and thereafter plaintiff concerned itself solely with the collection of the account from the S & F Repair Service, which continued, although rather tardily, to make payments and to reduce the account. On August 29, 1956, plaintiff wrote to S & F Repair Service, stating:
“Under the terms of the agreement reached with you, monthly payments are to be received in this office the 27th of each month. In view of your failure to send these payments as stipulated, we must advise that you are endangering your future as a Strunk distributor, and the extension of future credit is. indeed dubious.”
About this time Mr. Starns died and the S & F Repair Service became insolvent. When the instant suit was filed on July 10, 1957, the account, however, had been reduced to the sum of $500.
The only defense urged herein is a plea of novation, in which it is contended defendant’s obligation was extinguished by plaintiff’s substitution of a new obligation for the.original debt, and a new debt- or for the defendant. The plea was sustained by the trial judge.
Novation is defined and explained in the following articles of the LSA-Civil Code:
“Art. 2185 Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place.”
“Art. 2189 Novation takes place in three ways:
“1. When a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished.
“2. When a new debtor is substituted to the old one, who is discharged by the creditor.
“3. When by the effect of a new engagement, a new creditor is substituted to the old one, with regard to whom the debtor is discharged.”
“Art. 2192 The delegation, by which a debtor gives to the creditor another debtor who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation.”
Counsel for appellant earnestly insists no-vation does not take place by the substitution of one debtor for another unless there is an express declaration by the creditor to discharge the debtor who has made the delegation. The evidence as presented, it must be admitted, does not show that by oral or written expression plaintiff stipulated the release of the defendant from his original obligation. But we are of the opinion our jurisprudence has accorded a more liberal construction to the above-quoted articles and a debtor may be discharged where the intent of the creditor to novate is clearly indicated.
The most recent analogous decision of this court is Bates-Crumley Chevrolet Company, Inc. v. Brown, La.App.1932, 141 So. 436, 439, in which the court reviewed decisions ■ interpreting the articles of the Civil Code relating to novation and discussed most, if not all, of the cases referred to in appellant’s brief. The case held that where the seller of an automobile accepted a third party’s note not endorsed by buyers, the latter were discharged although the seller did not expressly agree to release the buyers. In the cited case, as found herein, no express declaration of release was made by the creditor. The opinion stated:
*197 “We think in the present case defendants have clearly shown a discharge by payment of the debt, and that such was the intention of the parties * *
The Supreme Court considered the issue of novation in Isaacs v. Van Hoose, 1930, 171 La. 676, 131 So. 845, 847. The evidence disclosed Isaacs hold certain property to the defendant a'nd had received in part payment mortgage notes signed by the vendee. Van Hoose sold the property to third parties who assumed the unpaid mortgage balance upon which they later defaulted. Isaacs foreclosed, not making the defendant a party to the suit, and subsequently brought suit for the unpaid balance of the original notes against the defendant, who pleaded novation, contending that an extension of time for payment granted by plaintiff established an intent to release the defendant. The court, although rejecting the defense, stated the rule of general application of novation to be:
“It is true novation by the substitution of a new debtor can take place without the consent of the original debtor, but the intention of the creditor to so novate must be expressed or clearly indicated.” (Emphasis supplied.)
We deem it unnecessary to attempt a review of the jurisprudence relating to the application of Articles 2189 and 2192, LSA-C.C. This has been excellently done in an article entitled “The Requisites and Effects of Novation: A Comparative Survey”, written by Walter L. Nixon, Jr., Tulane Law Review, Volume 25, page 100. The author therein, page 113, concluded:
“Despite the fact that Article 2192 of the Louisiana Civil Code provides that express intention on the part of the creditor is requisite to novation by the substitution of a new debtor for the old one, the Louisiana jurisprudence indicates that acts tanamount to an express declaration will suffice. íj; it
As observed above, our courts have not adhered to the strict construction contended for by appellant but have ruled a release or discharge can be evidenced by acts of a creditor clearly disclosing an intent to no longer look to the original debtor for pay-’ ment.
For the reasons herein assigned, the judgment from which appealed is affirmed at appellant’s cost.
HARDY, J., absent.